DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Robert L. Rattet, Esq.

*Proposed Counsel to Josan & Josan Inc.*

**Hearing Date: 10/21/2026 at 1:00 pm**
**Objection Deadline: 10/15/2026 at 5:00 pm**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| JOSAN & JOSAN INC., | Case No.: 26-12296 (SAB) |
| Debtor.[1] | |

---------------------------------------------------------x

**MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 363 AND RULES 4001(b), 4001(d) AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER (A) AUTHORIZING DEBTORS' USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION, AND (B) APPROVING PROPOSED INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

**TO: THE HONORABLE SHIRLEEN A. BARDAY**
**UNITED STATES BANKRUPTCY JUDGE**

Josan & Josan Inc. d/b/a Taco Mahal, the above captioned debtor and debtor-in-possession (the "Debtor"), in the above-captioned Chapter 11 case (the "Chapter 11 Case"), by its proposed counsel, Davidoff Hutcher & Citron LLP, submits this motion (the "Motion"), pursuant to sections 105, 361, 362 and 363 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and local rule 4001-2 of the Local Rules for the Bankruptcy Court of the Southern District

[1] The Debtor is Josan & Josan Inc. (Tax ID: **-***9680). The Debtor's mailing address is 73 Seventh Avenue South, New York, NY 10014.

of New York (the "Local Rules"), for entry of an interim order, substantially in the form annexed as **Exhibit A** (the "Interim Order"), and a final order (the "Final Order"): (i) authorizing the Debtor to use cash collateral in the ordinary course under section 363(c)(2) of the Bankruptcy Code in accordance with the budget annexed as **Exhibit B** (the "Budget"), (ii) granting adequate protection under sections 361 and 363(e) of the Bankruptcy Code, and (iii) scheduling a final hearing under Bankruptcy Rule 4001(b)(2). In support of the Motion, the Debtor relies on the *Declaration of Danikkah K. Josan Pursuant to Local Bankruptcy Rule 1007-2* (the "First Day Declaration"), [ECF Docket No. 3], and respectfully states:

**PRELIMINARY STATEMENT**

1. The Debtor urgently requires the use of the Cash Collateral to sustain its operations through the duration of this Chapter 11 Case. The Debtor proposes to operate in accordance with the Budget attached hereto as **Exhibit B**. The Debtor has only two possible secured creditors, the United States Small Business Administration (the "SBA"), and JPMorgan Chase Bank NA ("Chase" and together with the SBA, the "Prepetition Secured Creditors").

2. The Debtor believes that it is current on its prepetition obligations to the SBA and Chase. The Debtor's Chapter 11 case was commenced on account of a dispute with its landlord. Since filing, the Debtor has been focused on attempting to resolve the situation with the landlord. This Motion is an attempt to preserve the status quo while it resolves the situation with its landlord, if possible, and commences this Chapter 11 case. The Debtor intends to engage in discussions with each of the Prepetition Secured Lenders in an attempt to reach a consensual agreement on the use of Cash Collateral in the near term.

3. At this time, to maintain the status quo and as adequate protection, the Debtor proposes granting to the SBA and Chase the Replacement Liens and Superpriority Claims (each

as defined and described herein) in their continuing nature, extent, validity and order of priority that existed as of the Petition Date, solely to the extent of any post-Petition Date diminution in value of their collateral arising from the Debtor's use of the Cash Collateral (the "Superpriority Claim"), so that all parties may maintain their prepetition rights regarding the Debtor's assets. The Debtor's

**CONCISE STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(b)(1)(B)**

4. The following summarizes the material terms of the proposed use of cash collateral. It is qualified in its entirety by the Interim Order; if there is any inconsistency, the Interim Order governs.

| Term | Summary |
|---|---|
| Parties with an interest in cash collateral | The Debtor has two secured creditors: (i) The United States Small Business Administration (the "SBA"), as lender under two Economic Injury Disaster Loans, secured by a UCC-1 financing statement filed with the New York Department of State on June 30, 2020; and (ii) a line of credit with JPMorgan Chase Bank, N.A. ("Chase"), secured by a UCC-1 financing statement dated February 20, 2020. Together, the "Prepetition Secured Parties." |
| Purposes | Payroll, food and supplies, rent and other charges under the Debtor's lease, utilities, sales and payroll taxes, insurance and the other operating expenses shown in the Budget. |
| Duration | Interim: from entry of the Interim Order through the final hearing.<br>Final: through the earlier of the effective date of a confirmed plan or a Termination Event. |
| Budget and variance | Use limited to the Budget, with a permitted variance of 15% on total disbursements, tested on a cumulative basis every two weeks. Unused amounts carry forward. |
| Adequate protection | (a) Replacement liens on postpetition assets of the same type as the prepetition collateral, to the extent of any diminution in value, with the same validity and priority as the prepetition liens; (b) an allowed claim under section 507(b) to the extent the replacement liens prove inadequate; (c) maintenance of insurance; (d) monthly budget-to-actual reporting. |

| Term | Summary |
|---|---|
| Termination Events | Dismissal or conversion of the case; appointment of a trustee with expanded powers under section 1185; a material, uncured breach of the Interim Order; or cessation of the Debtor's operations. |
| Provisions under Bankruptcy Rule 4001(c)(1)(B) | None, other than the adequate protection described above. There is no cross-collateralization, no lien on avoidance actions or their proceeds, no waiver of rights under sections 506(c) or 552(b), no release, and no stipulation binding the estate as to the validity, priority or amount of any prepetition lien or claim. |

## JURISDICTION

5. This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference of the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

6. The statutory and rule bases for the relief requested are sections 105(a), 361, 363(c) and (e), and 1184 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and (d), 6004 and 9014.

## BACKGROUND

### A. The Bankruptcy Case

7. On September 26, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and elected to proceed under subchapter V of chapter 11. The Debtor continues to operate its business and manage its property as a debtor in possession under section 1184 of the Bankruptcy Code. Nat Wasserstein has been appointed as the Subchapter V Trustee. No committee has been appointed in this case.

8. The Debtor operates Taco Mahal, a restaurant at 73 Seventh Avenue South, also known as 33 Barrow Street, New York, New York (the "Premises"), which it leases from BOSB

LLC. A description of the Debtor's business and of the events leading to this case appears in the First Day Declaration.

## THE DEBTOR'S PREPETITION SECURED DEBT

9. The Debtor is the borrower under two Economic Injury Disaster Loans from the SBA. As of December 31, 2025, the aggregate balance of the two loans was approximately $494,640. The Debtor's monthly payments under the loans are approximately $2,521.00 and $3,359.29, and the Debtor was current on those payments as of the Petition Date. The SBA's lien is secured by a lien on all of the Debtor's assets including its accounts and credit card receivables.

10. The Debtor also owes Chase approximately $200,000 under two business lines of credit ending 1002 and 4005. Chase has filed two separate UCC-1 filings with the New York Department of State. Chase's lien is secured by a lien on all of the Debtor's assets including its accounts and credit card receivables.

11. The Debtor's cash on hand, its receivables from card processors and delivery platforms, and the proceeds of its inventory may therefore constitute "Cash Collateral" within the meaning of section 363(a) of the Bankruptcy Code. The Debtor reserves all rights to challenge the validity, priority, perfection and extent of any asserted lien, and nothing in this Motion is an admission as to any of them.

12. The Debtor estimates that, as of the Petition Date, it held approximately $17,000 in cash and approximately $10,000 in card and delivery-platform settlements in transit, and owned inventory with an estimated value of approximately $15,000. *See* 1007-2 Declaration, Schedule 3.

## THE DEBTOR'S NEED TO USE CASH COLLATERAL

13. The Debtor's restaurant operates seven days a week and depends on daily sales to pay its employees, its food, and supply vendors, and its rent. The Debtor has no source of funds

other than its operating receipts. Without the use of Cash Collateral, the Debtor could not make its rent payments of approximately $19,213 under the lease, its payroll, or its weekly food purchases, and the restaurant would close.

14. The Debtor's lease of the Premises is its most valuable asset, and the Debtor commenced this case to preserve it. The Debtor must pay rent as it comes due after the Petition Date under section 365(d)(3) of the Bankruptcy Code. A closure, even a brief one, would put the lease at risk, destroy the going-concern value of the business, and harm every creditor, including the Prepetition Secured Parties.

15. On September 25, 2026, before the Petition Date, the Debtor scheduled a wire transfer of $26,738 from its operating account to its proposed counsel, Davidoff Hutcher & Citron LLP, for counsel's retainer and the filing fee. The Debtor's bank would not send the wire before September 28, 2026, and it was sent that day, after the Petition Date, with a $25 bank fee. Counsel holds the funds in escrow and will not apply them except as the Court allows. The Debtor will ask the Court to address the transfer in its application to retain counsel. The Budget reflects the transfer in the first week.

**RELIEF REQUESTED**

16. The Debtor requests entry of the Interim Order: (a) authorizing the Debtor to use Cash Collateral in accordance with the Budget pending a final hearing, (b) granting the adequate protection described in this Motion, and (c) scheduling a final hearing no earlier than fourteen days after service of this Motion. The Debtor further requests entry of the Final Order after the final hearing. The Debtor will file the proposed Final Order before the final hearing.

**BASIS FOR RELIEF**

17. Courts repeatedly have recognized that use of cash collateral is appropriate where

necessary to preserve a debtor's ability to reorganize and thus maximize the value of an estate for all interested parties. *See In re Realty Southwest Assoc.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); H.R. Rep. No. 595, 95th Cong., 1st Sess. 344 (1977); 3 Collier on Bankruptcy 363.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006); *see also In re Dynaco*, 162 B.R. 389, 396; *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982). Bankruptcy Rule 4001(b) governs authorization for utilizing cash collateral and provides that the court may permit a trustee to use cash collateral prior to a final hearing to the extent necessary to avoid immediate and irreparable harm. After a final hearing held on at least fourteen days' notice, the court may grant the authority to use cash collateral on a permanent basis and other permanent relief requested herein.

18. A debtor-in-possession or trustee may not use cash collateral unless "(A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

19. The Debtor has determined, in the exercise of its business judgment, with the assistance of its advisors, that it requires the use of Cash Collateral. The Debtor has an immediate and critical need to use Cash Collateral to pay, in accordance with the Budget, various parties in the ordinary course of business and/or as authorized by the Court. Among other things, the continued use of Cash Collateral will enable the Debtor to continue to maintain the Premises, pay employees and insurance, which are essential to preserve estate value. In the absence of the authorization to use Cash Collateral, the Debtor's ability to maintain its operations will be jeopardized, causing immediate and irreparable harm to its estate, creditors, employees, and all other stakeholders. The Debtor's continued use of Cash Collateral is essential to enable the Debtor to meet its obligations in the ordinary course, including operating costs and expenses during the

pendency of the Chapter 11 case.

20. A debtor in possession may not use cash collateral unless each entity with an interest in it consents or the court, after notice and a hearing, authorizes the use. 11 U.S.C. § 363(c)(2). On request of an entity with an interest in the property, the court shall prohibit or condition the use as necessary to provide adequate protection of that interest. 11 U.S.C. § 363(e). The debtor bears the burden on adequate protection. 11 U.S.C. § 363(p)(1).

21. Section 361 of the Bankruptcy Code provides a non-exclusive list of the forms adequate protection may take, including periodic cash payments, additional or replacement liens, and other relief that results in the realization of the "indubitable equivalent" of the secured party's interest. 11 U.S.C. § 361. Adequate protection guards against a decline in the value of the secured party's interest in the collateral during the case. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-73 (1988). Its form is determined case by case.

22. Permissible forms of adequate protection include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. The purpose of adequate protection is to protect a secured creditor from diminution in the value of its property interest in its collateral during the period of use, sale, or lease. *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *see also Delbridge v. Production Credit Assoc. and Fed. Land Bank*, 104 B.R. 824, 827-28 (E.D. Mich. 1989); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990). The appropriate form of adequate protection must be determined on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985).

23. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Lenders in Cash Collateral to the extent of any

diminution in value of its interests in the pre-petition Collateral (including the Cash Collateral) resulting from the Debtor's use of Cash Collateral, the authorized use, sale or lease of prepetition Collateral, and the imposition of the automatic stay (collectively, the "Diminution in Value") pursuant to sections 361, 362, and 363 of the Bankruptcy Code, the Debtor proposes to grant to the Prepetition Secured Lenders the following further adequate protection:

i. Replacement Liens. Pursuant to sections 361, 363(c)(2), and 363(e) of the Bankruptcy Code, the Prepetition Secured Lenders are hereby granted additional and replacement valid, binding, enforceable non-avoidable, and automatically perfected post-petition security interests in and liens (the "Adequate Protection Liens") on all property (including any previously unencumbered property), whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's estate, of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, and all products, proceeds and supporting obligations of the foregoing, to the extent and with the same priority in the Debtors' post-petition collateral and proceeds thereof that Prepetition Secured Lenders held in the Debtors' pre-petition Collateral (collectively, the "Adequate Protection Collateral"). The Adequate Protection Liens shall be subordinate only to valid, perfected, unavoidable and enforceable liens, if any, existing as of the Petition Date that are senior in priority to the prepetition liens of Prepetition Secured Lenders pursuant to applicable law. Other than as specially set forth above, the Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral. The Adequate Protection Liens shall not attach to or be enforceable against any avoidance powers, actions and any proceeds thereof held by the Debtor or any trustee for the Debtor, including those pursuant to the avoidance powers set forth in §§ 544, 547, 548, and 550 of the Bankruptcy Code.

ii. Superpriority Claim. To the extent of any Diminution in Value and as additional adequate protection for the Debtor's use of Cash Collateral, pursuant to Sections 503 and 507(b) of the Bankruptcy Code, the Prepetition Secured Lenders shall have a superpriority administrative expense claim (the "Superpriority Claim"). The Superpriority Claim shall be senior and have priority over any and all claims against the Debtor under Section 507(a) of the Bankruptcy Code, whether in this proceeding or in any superseding proceeding, including all other administrative expense claims and unsecured claims against the Debtor's estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to Bankruptcy Code §§ 105, 326, 328, 330, 331, 364, 365, 503(a), 506(c), 507(a), 507(b), 546(d), 726, 1113 and 1114. The Superpriority Claim shall however, be junior in priority to the "Carve-Outs" as defined in the Order.

iii. The replacement lien and security interest granted herein are automatically deemed perfected upon entry of the Order without the necessity of Prepetition Secured Lenders taking possession, filing financing statements, mortgages, or other documents. Although not required, upon request by Prepetition Secured Lenders, the Debtor shall execute and deliver to Prepetition Secured Lenders any and all UCC Financing Statements, UCC Continuation States, or other instruments or documents considered by Prepetition Secured Lenders to be necessary in order to perfect the security interests and liens in Debtor's post-petition collateral and proceeds granted by the Order, and Prepetition Secured Lenders are authorized to receive, file, and record the foregoing at Prepetition Secured Lenders' own expense, which actions shall not be deemed a violation of the automatic stay.

iv. If requested, within fourteen (14) days of the entry of the Order, the Debtor shall provide an accounting to the Prepetition Secured Lenders setting forth the cash receipts and

disbursements made by the Debtor under the Order. In addition, the Debtor shall provide the Prepetition Secured Lenders all other reports required by the pre-petition loan documents and any other reports reasonably required by the Prepetition Secured Lenders, as well as copies of the Debtor's monthly United States Trustee operating reports.

v. In the event the Debtor defaults or violates the Order, the Prepetition Secured Lenders are entitled to request a hearing within fourteen (14) days (or if immediate and irreparable injury, loss, or damage may occur, an emergency hearing within 48 hours). For purposes of the Order, however, the Debtor shall not be deemed to be in default for any deviation from the Budget provided such deviation is plus/minus fifteen percent (15%) per line item of the Budget.

24. Based on the foregoing, the Debtor respectfully submits that the Adequate Protection Liens and Superpriority Claim will sufficiently protect the Prepetition Secured Lenders' interests in the Cash Collateral from any diminution in value, are permissible and appropriate under the Bankruptcy Code, and should be approved.

25. The adequate protection proposed here is sufficient. The replacement liens attach to the receivables, inventory and cash the Debtor generates after the Petition Date, so that Cash Collateral spent is replaced by new collateral of the same type. The Debtor's continued operation preserves the value of the business and of the collateral, which would be sharply reduced if the restaurant closed and its inventory, equipment, and receivables had to be liquidated. The Debtor will maintain insurance, report its results against the Budget each month, and give the Prepetition Secured Lenders reasonable access to its books and records.

26. Interim relief is warranted. Bankruptcy Rule 4001(b)(2) permits the court, at a preliminary hearing held before the fourteen-day period expires, to authorize the use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the estate pending a

final hearing. The interim Budget is limited to the expenses the Debtor must pay to keep the restaurant open during that period: rent, payroll, food and supplies, utilities and taxes.

27. The Interim Order does not contain any of the provisions described in Bankruptcy Rule 4001(c)(1)(B) other than the adequate protection described above. It does not grant liens on avoidance actions or their proceeds, does not cross-collateralize prepetition debt, does not waive the estate's rights under sections 506(c) or 552(b) of the Bankruptcy Code, and does not bind the estate or any party in interest to any stipulation about the validity, priority or amount of a prepetition lien or claim.

**WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

28. To the extent Bankruptcy Rule 6004(h) applies, the Debtor requests that the Interim Order be effective immediately. The Debtor's October 1 rent and October 2 payroll make a fourteen-day stay impracticable.

**NOTICE**

29. Notice of this Motion has been or will be provided to (a) the Office of the United States Trustee for Region 2; (b) the Subchapter V Trustee; (c) the United States Small Business Administration, (d) the United States Attorney for the Southern District of New York; (e) JPMorgan Chase Bank, N.A.; (f) BOSB LLC and its counsel; (g) the holders of the twenty largest unsecured claims against the Debtor; (h) the New York State Department of Taxation and Finance; (i) all parties that have requested notice under Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice is required.

**NO PRIOR REQUEST**

30. No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request entry of an interim Order, following the hearing, and such other and further relief as this Court deems just.

Dated: New York, New York
October 8, 2026

**DAVIDOFF HUTCHER & CITRON LLP**
605 Third Avenue
New York, New York 10158
(212) 557-7200

By: *<u>/s/ Robert L. Rattet</u>*
Robert L. Rattet

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| JOSAN & JOSAN INC., | Case No.: 26-12296 (SAB) |
| Debtor.[2] | |

-----------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) SCHEDULING A FINAL HEARING

Upon the motion dated October 8, 2026 (the "Motion") [ECF Docket No. __] of Josan & Josan Inc., the debtor and debtor in possession (the "Debtor"), for entry of an interim order (this "Interim Order") authorizing the use of cash collateral, granting adequate protection, and scheduling a final hearing; and the Court having jurisdiction under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference dated January 31, 2012; and this being a core proceeding under 28 U.S.C. § 157(b)(2); and venue being proper under 28 U.S.C. §§ 1408 and 1409; and notice of the Motion and the interim hearing having been adequate under the circumstances; and the Court having held an interim hearing on October ___, 2026; and the Court having found that the relief granted in this order is necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing, and that the adequate protection granted in this order is sufficient to protect the interests of the Prepetition Secured Parties (as defined in the Motion) during the interim period; it is hereby found and determined as follows:

A. On September 26, 2026 (the "Petition Date") the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") and

---

[2] The Debtor is Josan & Josan Inc. (Tax ID: **-***9680). The Debtor's mailing address is 73 Seventh Avenue South, New York, NY 10014.

has continued in possession of its property and the management of its businesses pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B. As of the date hereof, the Bankruptcy Court has not authorized the appointment of a creditors' committee as provided for in Section 1102 of the Bankruptcy Code. No trustee or examiner has been heretofore appointed in these proceedings.

C. The Debtor entered into two loans with the United States Small Business Administration (the "SBA"), who filed a UCC-1 financing statement regarding the Debtor. Chase has also filed a UCC-1 financing statement regarding the Debtor.

D. The term "Cash Collateral" shall mean and include all "cash collateral," as that term is defined by 11 U.S.C. § 363.

E. The Debtor's use of Cash Collateral is essential to the continued preservation and maximization of the Debtor's estate.

F. To the extent they possess any security interest in the Debtor's Cash Collateral, the SBA and Chase are entitled to receive adequate protection within the meaning of, and pursuant to 11 U.S.C. § 363(e), for any decrease in the value since the Petition Date of any interest the SBA and Chase may possess in the Cash Collateral as set forth in this Order.

G. Continued use of the Cash Collateral on an interim basis, pending a final hearing, is necessary to prevent immediate and irreparable harm to the Debtor's estate in that without authorization to use the Cash Collateral, the Debtor's ability to sustain its operations and meet its current, necessary, and integral business obligations will be impossible.

H. The value of Debtor's estate will be maximized by the continuation of the Debtor as a going business, and the use of the Cash Collateral is essential to such operation.

**BASED UPON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis as set forth in this order. Effective immediately and continuing through and including November __, 2026 at 5:00 p.m. (the "Interim Period"), the Debtor is authorized to use the Cash Collateral on an interim basis subject to the terms of this Order and in accordance with the budget annexed hereto as **Exhibit A**, subject to a 15% variance or further order of this Court. At the Final Hearing (as defined below), the Court will consider the Debtor's request to use Cash Collateral after the Interim Period and on a final basis.

2. This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this Court pursuant to 28 U.S.C. § 1408. Notice of relief sought herein was adequate and appropriate in the current circumstances of this Chapter 11 Case as contemplated by 11 U.S.C. § 102(1)(A) and Federal Rule of Bankruptcy Procedure 4001(b)(2).

3. For the purpose of adequately protecting the SBA and Chase from Collateral Diminution,[3] the SBA and Chase are hereby granted valid, enforceable, fully-perfected, security interests (the "Replacement Liens"), to the extent that their pre-petition liens were valid, perfected, and enforceable as of the Petition Date, and such Replacement Liens shall be in the same continuing order of priority that existed as of the Petition Date, to the extent of, and as security for, any decrease in the value of the SBA's and/or Chase's interest in the Cash Collateral since the Petition Date in, to and upon, all existing and hereafter-acquired property of Debtor of any kind or nature including, but not limited to, Debtor's real, personal, tangible and intangible property, as

[3] For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of the Secured Creditor's interests in Debtor's property as of the Petition Date by reason of Debtor's use of Cash Collateral in accordance with this Order.

well as any and all proceeds, products, offspring, rents and profits thereof, in the same validity, order, and priority as the pre-petition liens, subject, in accordance with the priority as set forth herein, and subordinate only to: (i) United States Trustee fees pursuant to 28 U.S.C. Section 1930, together with interest, if any, pursuant to 31 U.S.C. Section 3717 and any Clerk's filing fees; and (ii) the fees and commissions of a hypothetical Chapter 7 trustee in an amount not to exceed $10,000. In addition, the Replacement Liens granted hereby shall not attach to the proceeds of any recoveries of estate causes of action under Sections 542 through 553 of the Bankruptcy Code.

4. All of the Debtor's expenditures shall be specifically accounted for in detailed monthly operating reports which the Debtor shall file with the Bankruptcy Court.

5. The security interests and liens herein granted and regranted, including the Replacement Liens: (i) are and shall be in addition to, and not in substitution of, all security interests, liens, encumbrances, and rights of set-off existing in favor of the SBA and Chase on the Petition Date, or other rights of theirs currently existing or hereinafter arising; (ii) shall secure, in whole or in part, the payment of indebtedness to the SBA and Chase; and (iii) shall be deemed to be perfected without the necessity of any further action by the SBA, Chase, or the Debtor. Without limitation, therefore, the SBA and Chase shall not be required to file financing statements or other documents in any jurisdiction or take any other action to validate or perfect the liens and security interests granted by this Order. This Order shall be sufficient and conclusive evidence of the validity of the Replacement Liens.

6. Both the SBA and Chase shall have the right to assert a superpriority claim pursuant to 11 U.S.C. § 507(b), and the Debtor shall have the right to all defenses to such a claim(s).

7. The Debtor shall maintain all necessary insurances, including, without limitation, liability and workmen's compensation as may be required, and obtain such additional insurances in an amount as is appropriate for the businesses in which the Debtor is engaged.

8. The right of Debtor to use the Cash Collateral shall terminate immediately upon the occurrence of any of the following events:

(a) The entry of an order of the Court converting or dismissing the Chapter 11 Case;

(b) The entry of an order of the Court confirming a plan of reorganization in the Chapter 11 Case;

(c) The failure of the Debtor: (i) to perform any of its obligations under this Order (a "Default"), and (ii) to cure such Default within ten (10) business days after the giving of written notice thereof to the SBA, Chase, the United States Trustee, the Subchapter V trustee, and any official committee appointed in the Chapter 11 Cases (the "Cure Period");

(d) The amendment, supplementation, waiver, or other modification of all or part of this Order without the SBA and Chase having been given at least seventy-two (72) hours advance, written notice, by overnight service upon them (unless otherwise prescribed by the Bankruptcy Court having jurisdiction over Debtor's case); or

(e) The termination of all or substantially all of the operations of the Debtor, whether by voluntary act(s) or omission(s) of the Debtor, or otherwise.

9. Nothing contained in this Order shall be construed to create rights of third parties for or against the SBA and/or Chase not otherwise provided by law.

10. The SBA and/or Chase may, in their discretion, file a certified copy of this Order in any jurisdiction in which the Debtor has or come to have real or personal property, and in such

event, the subject filing/recording officer is hereby authorized and directed to file/record such certified copy.

11. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of the SBA, Chase, and the Debtor.

12. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such stay, modification, or vacatur shall not affect the validity and enforceability of any lien, priority, or benefit with respect to any indebtedness of the Debtor to the SBA and Chase.

13. The findings contained in this Order are binding upon the Debtor and all parties in interest (including, but not limited to, any statutory committee subsequently appointed in the Chapter 11 Case).

14. This Order shall be binding upon any subsequently appointed or elected trustee in a successor case under Chapter 7 of the Code.

15. The Bankruptcy Court shall retain jurisdiction with respect to all matters pertaining to this Order.

16. Objections to the final relief requested in the Motion shall be made in writing, filed with the Bankruptcy Court at the Court's website www.nysb.uscourts.gov (log in and password required), with a copy delivered directly to the chambers of the Honorable Shireen A. Barday and served upon Davidoff Hutcher & Citron LLP, 605 Third Avenue, New York, NY 10158, Attn: Robert L. Rattet, Esq., Email: rlr@dhclegal.com so as to be received no later than **October __, 2026 at 4:00 p.m. (EST).**

17. A hearing (the "Final Hearing") to consider the relief requested in the Motion on a final basis shall be conducted on **____ __, 2026 at ____** before the Honorable Shireen A. Barday, United States Bankruptcy Judge, Southern District of New York.

18. Except as otherwise provided herein, or by Order of the Court, all demands, notices, requests, consents, reports, or other communications provided for hereunder shall be made in writing, and shall be deemed to have been given either upon: (i) personal delivery, by courier or messenger service, and acknowledgment, by any officer (or authorized recipient of deliveries to the office) of the party to whom given, as of the date and time so acknowledged, or (ii) due deposit into the United States mail, by first class mail. In all cases, such demands, notices, requests, consents, reports, or other communications shall be dispatched to the following addresses (or such other addresses as may be furnished hereafter, by written notice given in accordance with the terms of this paragraph): In the case of Debtor:

Robert L. Rattet, Esq.
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, NY 10158
Phone: (212) 557-7200
Email: rlr@dhclegal.com

# EXHIBIT B

Budget

**Josan & Josan Inc. (Case No. 26-12296)**

**13-Week Budget, weeks beginning October 8, 2026**

| Line item | Wk 1<br>14-Oct | Wk 2<br>21-Oct | Wk 3<br>28-Oct | Wk 4<br>4-Nov | Wk 5<br>11-Nov | Wk 6<br>18-Nov | Wk 7<br>25-Nov | Wk 8<br>2-Dec | Wk 9<br>9-Dec | Wk 10<br>16-Dec | Wk 11<br>23-Dec | Wk 12<br>30-Dec | Wk 13<br>6-Jan | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Operating receipts | 37,700 | 37,700 | 37,700 | 37,700 | 37,700 | 37,700 | 37,700 | 37,700 | 37,700 | 37,700 | 37,700 | 37,700 | 37,700 | 490,100 |
| Payroll (ADP), incl. taxes and fees | -5,330 | -5,330 | -5,330 | -5,330 | -5,330 | -5,330 | -5,330 | -5,330 | -5,330 | -5,330 | -5,330 | -5,330 | -5,330 | -69,290 |
| Vendors and other payees (checks) | -5,910 | -5,910 | -5,910 | -5,910 | -5,910 | -5,910 | -5,910 | -5,910 | -5,910 | -5,910 | -5,910 | -5,910 | -5,910 | -76,830 |
| Other payees (electronic) | -1,680 | -1,680 | -1,680 | -1,680 | -1,680 | -1,680 | -1,680 | -1,680 | -1,680 | -1,680 | -1,680 | -1,680 | -1,680 | -21,840 |
| Food and supplies | -5,950 | -5,950 | -5,950 | -5,950 | -5,950 | -5,950 | -5,950 | -5,950 | -5,950 | -5,950 | -5,950 | -5,950 | -5,950 | -77,350 |
| Sales tax (NYS DTF) | -2,780 | -2,780 | -2,780 | -2,780 | -2,780 | -2,780 | -2,780 | -2,780 | -2,780 | -2,780 | -2,780 | -2,780 | -2,780 | -36,140 |
| Utilities and services | -1,215 | -1,215 | -1,215 | -1,215 | -1,215 | -1,215 | -1,215 | -1,215 | -1,215 | -1,215 | -1,215 | -1,215 | -1,215 | -15,795 |
| Card processing fees | -1,018 | -1,018 | -1,018 | -1,018 | -1,018 | -1,018 | -1,018 | -1,018 | -1,018 | -1,018 | -1,018 | -1,018 | -1,018 | -13,233 |
| Marketing | -500 | -500 | -500 | -500 | -500 | -500 | -500 | -500 | -500 | -500 | -500 | -500 | -500 | -6,500 |
| Other operating costs | -700 | -700 | -700 | -700 | -700 | -700 | -700 | -700 | -700 | -700 | -700 | -700 | -700 | -9,100 |
| Accountant | - | -500 | - | - | - | -500 | - | - | - | -500 | - | - | - | -1,500 |
| Rent (fixed) | -17,282 | - | - | - | -17,282 | - | - | - | - | -17,282 | - | - | - | -51,846 |
| Additional rent | -1,931 | - | - | - | -1,931 | - | - | - | - | -1,931 | - | - | - | -5,793 |
| Subchapter V trustee deposit | - | - | -1,000 | - | - | - | -1,000 | - | - | - | - | -1,000 | - | -3,000 |
| Retainer wire to proposed counsel (held in escrow; see Motion) | -26,763 | - | - | - | - | - | - | - | - | - | - | - | - | -26,763 |
| **Total receipts** | **37,700** | **37,700** | **37,700** | **37,700** | **37,700** | **37,700** | **37,700** | **37,700** | **37,700** | **37,700** | **37,700** | **37,700** | **37,700** | **490,100** |
| **Total disbursements** | **-71,059** | **-25,583** | **-26,083** | **-25,083** | **-44,296** | **-25,583** | **-26,083** | **-25,083** | **-25,083** | **-44,796** | **-25,083** | **-26,083** | **-25,083** | **-414,980** |
| **Net cash flow** | **-33,359** | **12,117** | **11,617** | **12,617** | **-6,596** | **12,117** | **11,617** | **12,617** | **12,617** | **-7,096** | **12,617** | **11,617** | **12,617** | **75,120** |
| Beginning cash | 45,000 | 11,641 | 23,758 | 35,375 | 47,992 | 41,397 | 53,514 | 65,131 | 77,748 | 90,365 | 83,269 | 95,886 | 107,503 | |
| **Ending cash** | **11,641** | **23,758** | **35,375** | **47,992** | **41,397** | **53,514** | **65,131** | **77,748** | **90,365** | **83,269** | **95,886** | **107,503** | **120,120** | |

Projection. Receipts and costs are based on the Debtor’s January to September 2026 operating account statements and adjusted for changes that take effect on filing.

DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Robert L. Rattet, Esq.

*Proposed Counsel to Josan & Josan Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| JOSAN & JOSAN INC., | Case No.: 26-12296 (SAB) |
| Debtor.[1] | |

-----------------------------------------------------------x

**NOTICE OF HEARING OF DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 363 AND RULES 4001(b), 4001(d) AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER (A) AUTHORIZING DEBTORS' USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION, AND (B) APPROVING PROPOSED INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

PLEASE TAKE NOTICE, that on October 8, 2026, the above captioned debtor and debtor in possession (the "Debtor"), filed its *Motion Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 and Rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure for Order (A) Authorizing Debtors' Use of Cash Collateral and Providing Adequate Protection, and (B) Approving Proposed Interim and Final Orders Authorizing Use of Cash Collateral* (the "Cash Collateral Motion").

PLEASE TAKE FURTHER NOTICE, that a hearing on the Cash Collateral Motion will be held on **October 21, 2026, at 1:00 p.m., prevailing Eastern Time** (the "Hearing"), before the Honorable Shireen A. Barday, United States Bankruptcy Judge. The Hearing will be held by zoom in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004.

[1] The Debtor is Josan & Josan Inc. (Tax ID: **-***9680). The Debtor's mailing address is 73 Seventh Avenue South, New York, NY 10014.

PLEASE TAKE NOTICE that any person--whether a party or a member of the public--wishing to attend the remote hearing must register their appearance using the eCourt Appearance tool, which is available at https://www.nysb.uscourts.gov/ecourt-appearance, by 4:00 p.m. the business day before the hearing or conference. Applicable Zoom hearing procedures are available at https://www.nysb.uscourts.gov/zoom-video-hearing-guide. Outlook invitations to persons who registered for remote access will be sent after 4:00 p.m. the business day before the hearing.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

PLEASE TAKE FURTHER NOTICE that any objections, or other responses shall be electronically filed and served so as to be received no later than **October 15, 2026, at 5:00 P.M.** (prevailing Eastern Time) and shall conform to the United States Bankruptcy Rules and the Local Rules of the Bankruptcy Court. Should you be unable to e-file a document, you should contact Chambers, and serve via e-mail upon Davidoff Hutcher & Citron LLP, Counsel for the Debtor, to Craig M. Price at cmp@dhclegal.com together with proof of service thereof.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court. Failure to appear may result in relief being granted as requested. If a party does not timely call and connect to the scheduled hearing, the hearing may proceed in their absence. If the movant does not appear, the matter may be denied for failure to appear.

PLEASE TAKE FURTHER NOTICE that unless responses are received by that time, the relief may be granted as requested.

Dated: New York, New York
October 8, 2026

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(212) 557-7200

By: *<u>/s/ Robert L. Rattet</u>*
Robert L. Rattet